

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 11, 2020

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street Square
New York, New York 10007

      Re:    *United States v. Saeed Malik Thomas Norris*, 18 Cr. 871 (PKC)

Dear Judge Castel:

      The Government submits this letter in connection with the sentencing of Saeed Malik Thomas Norris ("Norris" or the "defendant") in the above-referenced matter, currently scheduled for November 18, 2020 at 12:15 p.m. The defendant took advantage of three vulnerable teenagers—then aged 16 years-old, 16 years-old, and 15 years-old, respectively—to have them, or attempt to have then, engage in sexual activity to make money for him. He took advantage of teenagers and made money by sexually exploiting them. For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 135 to 168 months' imprisonment is necessary to satisfy the goals of sentencing.

**A. Background**

      On December 11, 2018, a Grand Jury sitting in the Southern District of New York returned a sealed indictment, 18 Cr. 871 (PKC) (the "Indictment"), charging Norris in two counts. Specifically, the defendant was charged in Count One with conspiring to engage in sex trafficking, including of minor victims, in violation of Title 18, United States Code, Section 1594(c), and in Count Two with sex trafficking of a minor victim, in violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 2.

      On December 12, 2018, the defendant was arrested and ordered detained, following a bail hearing before Magistrate Judge James L. Cott. (See Dec. 12, 2018 Tr., ECF No. 7). Subsequently, the defendant appealed that determination to this Court. Following argument held on March 29, 2019, this Court concluded that the defendant posed both a risk of flight and a danger to the community, and ordered his continued detention. (See Mar. 29, 2019 Tr., ECF No. 19).[1]

---

[1] Additionally, in April 2020, the defendant made a third bail application, arguing that he should be released pursuant to 18 U.S.C. § 3145(c) in light of the COVID-19 pandemic. (*See* ECF No. 51 ("Def. COVID Bail Motion")). On April 28, 2020, following a telephonic bail hearing, this Court denied the defendant's motion, finding that, even if the burden of proof had been on the

On November 14, 2019, the defendant pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to a one-count superseding information (ECF No. 44 (the "Superseding Information")), charging the defendant with, in or about July and August 2016, coercion and enticement of a minor to engage in illegal sexual activity, in violation of Title 18, United States Code, Sections 2422(b) and 2, relating to a then 16 year-old victim ("Victim-1"), a then 16 year-old victim ("Victim-2"), and a then 15 year-old victim ("Victim-3," and together with Victim-1 and Victim-2, the "Victims").

The parties stipulated in the Plea Agreement that the applicable Guidelines range was 135 to 168 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment (the "Stipulated Guidelines Range"). In the Final Presentence Report, dated March 31, 2020 (the "PSR"), the United States Probation Office ("Probation") recommended a sentence of 151 months' imprisonment.

The defendant has been in custody since being remanded on December 12, 2018.

**B. Offense Conduct**

In the summer of 2016, Victim-1 was introduced to the defendant by Victim-2 at a party in Brooklyn, New York. Victim-1 became inebriated at the party, and, afterward, the defendant conveyed that he was interested in Victim-1 romantically, then initiated sexual intercourse with Victim-1. Afterward, the defendant suggested that Victim-1 engage in prostitution, stating, as set forth in the PSR, "Do you wanna be my hoe? You wanna make money. You have good vagina and will make a lot of money." The defendant then posted, *i.e.*, advertised for commercial sex services, Victim-1 on the website Backpage.com ("Backpage"), a website frequently used to advertise women and girls for prostitution prior to its seizure in spring 2018 by the Federal Bureau of Investigation. The defendant took a cut of the approximately $20 per customer Victim-1 earned through engaging in prostitution on the defendant's behalf. At one point, the defendant asked Victim-1 her age. When Victim-1 replied that she was 16 years old, the defendant simply responded "you're young," and continued exploiting her. (*See* PSR ¶¶ 10-11).

Victim-1 left the defendant for approximately two to three weeks, before returning to work for him again, this time at a different location. Victim-1 then recommenced engaging in prostitution on the defendant's behalf, this time joined by Victim-2 and Victim-3. The defendant unsuccessfully attempted to have Victim-2 engage in prostitution on his behalf, instead using Victim-2 to recruit other victims; for example, Victim-1. The defendant was, however, successful in exploiting Victim-3, who engaged in in-calls, *i.e.*, meeting a customer for commercial sex inside one's residence, for the defendant. During this time, in about August 2017, the defendant changed his business model, taking approximately $40 to $50 per customer from the girl who made the most money, and all the money from the girl who made the least. (*See* PSR ¶¶ 12-15).

---

Government, the defendant was by clear and convincing evidence a danger to the community and a flight risk; the Court also found that there were not exceptional circumstances warranting Norris' release.

**C. The Probation Office's Recommendation and the Defendant's Submission**

Probation calculated that the defendant has a total offense level of 32 and is in criminal history category III, resulting in a Guidelines range of 151 to 188 months' imprisonment.[2] (PSR at 22). Probation recommends a sentence of 151 months' imprisonment, which is within the Stipulated Guidelines Range. (*Id.* at 22-24). Probation supports its recommendation with the following assessment of the defendant's conduct:

> The defendant does not appear to have fully come to terms with his involvement in the instant offense. The three victims in this case were minors in a vulnerable state. They were [absent without official leave] from a social services foster home placement when the defendant convinced them to become prostitutes. He was fully aware of their ages and yet continued to place their advertisements on the internet. The defendant's actions have fostered the continued and widespread proliferation of minors in the commercial sex industry.

(*Id.*). Accordingly, Probation finds that "a 151 month … term of imprisonment would be sufficient, but not greater than necessary, to comply with the factors to be considered in imposing a sentence outlined in 18 U.S.C. § 3553(a)." (*Id.* at 23).

The defendant's submission requests that this Court sentence the defendant to the statutory mandatory minimum of 120 months' imprisonment. (Def. Mem. at 1). In support of this request, the defendant's submission cites, among other factors, the significant adverse circumstances of the defendant's childhood—including sexual assault—and argues that a sentence within the Stipulated Guidelines Range would be greater than necessary to achieve the purposes of sentencing.

---

[2] Probation found that the defendant was in Criminal History Category III, assigning two additional points, pursuant to United States Sentencing Guidelines Section 4A1.1(d), because the defendant committed the instant offense while under a criminal justice sentence for a 2012 attempted burglary conviction. (*See* Final Presentence Investigation Report, dated March 31, 2020, ECF No. 48 ("PSR") ¶¶ 57-59). At the time of the plea, the information available to the Government and defense indicated that the defendant no longer was on parole for that offense as of June 2016, predating the present offense conduct, which began in July 2016. As a result of the two additional criminal history points, the United States Probation Office calculates the relevant Guidelines range as 168 to 210 months' imprisonment. The Government has no independent information beyond the information provided by the defense about the defendant's parole termination paperwork, signed on June 2, 2016, or by the Probation Department about the defendant's date of parole discharge on August 4, 2016. (*See* PSR ¶ 56). However, Application Note to § 4A1.1(d) states, in part, that a criminal justice sentence is one "having a custodial or supervisory component, although active supervision is not required for this subsection to apply." Accordingly, to the extent the defendant still technically was on parole, even if administratively, after signing his termination papers, Section 4A1.1(d) would seem applicable. In any event, however, the Government stands by the Guidelines calculation in the Plea Agreement and requests that the defendant be sentenced within the Stipulated Guidelines Range.

**D. Related Cases**

As noted in the PSR, the investigation that led to this prosecution began when the FBI's Child Exploitation and Human Trafficking Force received a tip from a non-profit organization about trafficking of minor victims—many of whom were residing, or had previously resided, at Facility-1. (PSR ¶ 8). Ultimately, the investigation has led to the prosecution of 19 individuals for sex trafficking offenses, each of whom has been convicted either by entering into a plea agreement or following trial. The other 18 defendants were convicted of violations of the Travel Act, sex trafficking conspiracy, or substantive sex trafficking offenses. In general, the Government extended Travel Act pleas only for those defendants who were substantially less culpable than the average defendant, where the conduct included, for example, providing a residence from which others trafficked victims (*e.g.*, Sands, Roberts) or otherwise served in a relatively more accessorial role in their respective conspiracies (*e.g.*, Braham, Bullock, Wright).

Ten defendants have already been sentenced, as set forth below:

In the category of defendants who assisted or facilitated other defendants' exploitation of minor girls and who pled to conspiracy to violate the Travel Act, in violation of Title 18, United States Code, Section 371, the following individuals have been sentenced:

- Ruben Sands, who was sentenced to 60 months' imprisonment in *United States v. Sean Merchant, et al.*, 18 Cr. 527 (KMW);
- Christopher Bullock, Dariel Braham, and Adrienne Roberts, sentenced to 54, 48, and 48 months' imprisonment, respectively, in *United States v. Hubert Dupigny, et al.*, 18 Cr. 528 (JMF); and
- Cimmie Wright, who was sentenced to 51 months' imprisonment in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK).

In the category of defendants who have been convicted of sex trafficking offenses, *i.e.*, violations of Title 18, United States Code, Sections 1591 or 1594(c), the following defendants have been sentenced:

- Ruben Morciglio, sentenced to 240 months' imprisonment after pleading guilty to one count of sex trafficking a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and two counts of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c).
- Luidji Benjamin, sentenced to 204 months' imprisonment after being convicted at trial of one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and one count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Benjamin*, 18 Cr. 874 (JSR);
- Jabari Kennedy, sentenced to 156 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK);
- Jermaine Myrie, sentenced to 135 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Sean Merchant, et al.*, 18 Cr. 527 (KMW); and

- Lawrence Walsh, who entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Luidji Benjamin. Walsh received a sentence of time-served after serving approximately 19 months' imprisonment. *See United States v. Lawrence Walsh*, S1 18 Cr. 874 (JSR).

Norris pled to violations of Title 18, United States Code, Sections 2422(b) and 2, which reflects that the defendant was far more culpable than those defendants who were convicted of violations of the Travel Act and instead analogous to the latter category of defendants, who pled to sex trafficking offenses. The defendant exploited three, minor vulnerable victims, even conveying interest in one romantically—and having sexual intercourse with her—prior to asking her to engage in prostitution. In the Government's view, the defendant is less culpable than certain defendants who used violence in furtherance of their sex trafficking of minors (*e.g.*, Morciglio), or who made threats against minor victims (*e.g.*, Kennedy).

### E. Applicable Law

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

### F. Discussion

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a sentence within the Stipulated Guidelines Range. While the defendant's age, the circumstances of his childhood, and, in particular, the sexual abuse he suffered, are mitigating factors, his conduct caused substantial harm to even younger victims, exploiting particularly vulnerable members of society for his own financial gain. A substantial incarceratory prison sentence is necessary and appropriate here.

*1. Seriousness of the Offense, Respect for the Law, and Just Punishment*

The harm from this type of offense cannot be overstated. The defendant exploited two 16-year-old victims and one 15 year-old victim. Each of the Victims was vulnerable, living in the social services system. The defendant then sold—or, in the case of Victim-2, tried to sell—the Victims to adult men for his own profit. The harm to young women from such sexual exploitation is well-documented, severe, and long-lasting. This case is no exception, as the defendant's conduct caused substantial harm to the Victims. The harm to these Victims is all the more significant because of the difficult circumstances in which they grew up. Through his conduct, the defendant

has demonstrated a lack of respect for the law, and a dangerous indifference to the circumstances of particularly vulnerable members of society.

The defense's sentencing submission describes the defendant's difficult upbringing, his psychological problems, and the abuse he suffered. In particular, as set out in the defendant's submission and the corresponding mitigation report ("McCarthy Report"), as well as the PSR, the Government acknowledges that the defendant was himself a victim of sexual violence. (*See* Def. Mem. at 10; PSR ¶ 79). Both the McCarthy Report and the PSR cite the defendant's psychological issues, including bipolar disorder, major depression, and post-traumatic stress disorder, among others. (*See* McCarthy Report at 16-17; PSR ¶¶ 81-85; Def. Mot. 9-12). The Government does not discount the severity of these issues or the adversity the defendant has faced; relatedly, the Government recognizes the defendant's relative youth at the time of this offense.

Unfortunately, the defendant exploited victims even more vulnerable and younger than he, subjecting them to trauma and sexual exploitation; put differently, he played a role in visiting upon others traumas similar to that he had suffered himself. Moreover, and troublingly, both the defendant, in his own words, *see* PSR ¶¶ 86, and the McCarthy Report, cast doubt on whether the defendant has come to terms with his conduct, *see* McCarthy Report at 18. The defendant was clear in his plea allocution that "[b]etween July and August of 2016, [he] … knew that an individual under the age of 18 was engaging in prostitution," that he "intended to further a scheme to entice Victim 1, 2, and 3 to engage in further acts of prostitution by permitting Victim 1 to use my cell phone and my email account to post online internet advertisements offering herself and Victim 2 and 3 as prostitutes;" and that he, "also arranged for Victim 1, 2, and 3, after an eviction … to use another apartment from another individual to engage in acts of prostitution." (*See* Nov. 14, 2019 Plea Transcript at 16-17). As the McCarthy Report notes, the defendant now recharacterizes and minimizes his involvement. (*See* McCarthy Report at 18). Further, and while acknowledging that the defendant "no doubt … has psychiatric issues that require psychotropic and therapeutic intervention," he "impresses as an antisocial, impulsive, and self-destructive individual," that "[h]is involvement in the instant offense does not impress as sexually motivated but is best understood as opportunistic," and that the defendant "engages in rationalizations, justifications, and excuses to explain" his actions. (*Id.*). Both the PSR and the McCarthy Report indicate that the defendant has not come to terms with his conduct and continues to minimize the gravity of his wrongdoing. His "opportunistic" sexual exploitation of vulnerable minors is tremendously serious conduct, deleterious to the Victims, society, and the rule of law.

Accordingly, and despite the mitigating factors, the Government respectfully submits that this egregious conduct necessitates substantial punishment.

> 2. *The Need to Protect the Public and Deter the Defendant and Other Similarly Situated Individuals*

The defendant has two prior criminal convictions, both relating to conduct when he was 17 years old. First, a conviction for criminal trespass in the second degree; and second, for attempted burglary. (PSR ¶¶ 55-56). With respect to the burglary, the PSR indicates that the defendant stole, among other things, electronic equipment, such as laptops, a cellphone, and a video game console.

(PSR ¶ 56). As the defense submission notes, the defendant was a minor when he sustained these convictions and, in both cases, the conduct was not violent.

The defense submission also argues that, among other things, at the time of the instant offense the defendant believed he no longer was on parole from his earlier convictions and that Probation's calculation of his criminal history category overstates his criminal record. (*See* Def. Mot. at 4-6). As set forth above, the Government stands by the Plea Agreement and respectfully requests that the Court sentence the defendant within the Stipulated Guidelines Range. That said, with respect to his culpability, the Court should afford no weight to the defense's argument that, because the defendant believed his parole supervision ended prior to the instant offense, it somehow bears on the importance of deterrence as a sentencing factor. Regardless of whether the defendant's parole ended in June 2016, barely predating the offense beginning in July 2016, or in August 2016, that the defendant would continue to engage in criminal activity—and *serious* criminal activity—during that time period speaks to a lack of respect, or at least regard, for the rule of law. If anything, that the defendant believed his parole had concluded and boomeranged back into criminal conduct immediately instead suggests a particularly acute need for deterrence here.

Finally, a substantial sentence of incarceration would send a powerful message to others who would sexually exploit minor victims for their own gain. It would show that such actions will not be taken lightly, and that those who victimize girls and women—especially particularly vulnerable ones, from the foster care system—will be prosecuted and punished to the fullest extent of the law.

**G. Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____/s/_____
Mollie Bracewell
Jacob Gutwillig
Assistant United States Attorneys
(212) 637-2218 / 2215